May it please the court, my name is Andrew Koenig, I'm the attorney for Plaintiff Appellant Joe Campbell, and if I might, just as a preliminary matter, ask for two minutes for rebuttal. Right, and we take it from your time, so watch your clock. Yeah, I'll try to keep it that way, thank you. Well, this is a admittedly difficult case for an ALJ to assess. When there's an 11-year gap with medical treatment, 7 years worth of no treatment between the date last insured and the initial diagnosis of multiple sclerosis, there's obviously going to be difficulties with the proof of the case. But these are non-adversarial proceedings, which are considered fact finding, and there are requirements of the judge to participate in fully and completely developing the medical evidence. We have a case dealing with MS diagnosed affirmatively in 1989, a date last insured over 7 years later. I think we all understand the progressive nature of MS. It doesn't get better. It is going to be disabling at some point in time in the future. The issue for the judge to decide is, was it disabling before June 30th of 1996? Mr. Koenig, let me ask you a question. I found that the record in this case was remarkable and unusual in that it had a very long stipulation between the parties. That's docket entry number 14. And the stipulation caught my eye because at page 2, lines 9 through 13, I read this. However, due to her lack of medical insurance, AR 395, plaintiff did not seek medical care for her MS from 1989 until 2000. And there are no medical records of treatment in the administrative record during that time period. What struck me about that was that it seemed to me to be a stipulation of fact before the district court by both parties that the reason she didn't seek medical treatment was because she didn't have medical insurance. I compared that stipulation of fact to the ALJ's repeated observation that one of the reasons that he found that her disease had not progressed to the point of disability was that she had not sought any medical treatment. I found that observation and that inference to be contrary to the stipulation of fact. And can I clarify your understanding? Are we talking about the mutual joint stipulation submitted by the parties? Yes. Right. Well, Your Honor, as much as I'd like to agree with you, to be fair, the district court orders this as a joint stipulation as a matter of convenience and effect. Put your arguments all in one document and present it to the judge. I don't believe this word stipulation means we're necessarily all stipulating to the facts. It's a joint stipulation presenting arguments. And I presented the facts as I saw them. They had an opportunity to counter any facts as I presented them. But as far as a legal stipulation that all parties agree to this fact, I don't believe that's what the joint stipulation's legal effect was. Is that responsive at all to your question? Well, it's not the response I expected. No. Believe me. I would like to adopt your interpretation that there's inconsistent findings between what the judge found and what we found. I was ready to find that having that stipulation, the ALJ was repeatedly in error in considering her lack of medical treatment as indicative that she wasn't suffering from any effects of the disease because it was stipulated that she didn't seek medical treatment because of her lack of insurance. But it's not disputed that she didn't seek medical treatment. No. Well, she testified in 1989. Well, she didn't have insurance. Her doctor says, nothing I can do. Go eat right. Live with it. I'm sorry. There's nothing we can do. Now, I'm not privy to the progression of treatment for MS patients, but apparently by the late 90s there were effective drugs now on the market, became on the market, very, very expensive. She was finally admitted to a drug program, assistance program, that allowed her to get treatment and almost medication. But that wasn't until 2000. So it's correct. There was 11 years of treatment, of lack of treatment, primarily because of the lack of medical care. And I agree with the premise. The lack of medical insurance. Lack of medical insurance. I'm sorry. And I agree with the premise that based on that and the dearth of medical evidence, the judge made a lot of unfounded presumptions about this case. There's a lot of speculation by this day, I'll say, and inferences from the testimony of what her daily activities were, just speculation that she could be doing other kinds of activities. And that's, as I stated. Well, now, abandoning, I think that's a very generous position you've taken, but abandoning that, then isn't the lack of seeking medical treatment a circumstance from which one could infer that there was no medical treatment required? No. I believe under Social Security ruling 96-7P, there's a list of criteria for assessing credibility of a claimant's testimony. One of those is specifically not only lack of medical insurance to seek care, but also the lack of any efficacy of treatment to treatment. In other words, I'm not going to go to a doctor just to create evidence for a Social Security case. If I can't go and get treatment because there's nothing they can do, that should not blend against my credibility. I'm not going to the doctor just to say, hello, how are you? But if there were evidence that palliative treatment, perhaps arrestive treatment, was available, then the lack of seeking treatment would be a circumstance from which a reasonable trier of fact could infer that there was no need for treatment. I would say under the auspices of an MS case, though, it's clear that this is going to be a progressively deteriorating disease. If someone had access to care, they would reasonably seek it. She was and one of the things, one of the doctors. Kennedy. You're arguing different inferences from the same facts. But I'm, if absent a stipulation, it is an available, reasonable inference to draw that lack of treatment shows lack of need of treatment. I would say in an MS case, I don't think that's a reasonable inference, because of the progressive nature of the disease we all understand. Well, there's also no dispute as to Dr. Rhee's diagnosis that she had MS. Even Dr. Rack agreed. Even Dr. Rack agreed. It's undisputed. In 1989, she had MS. And Dr. Rack also said that it would be totally disabling by the 1990s. And that's, Your Honor, where. Which is inconsistent with ALJ spying. I think that's where I get, the ALJ filtered Dr. Rack's testimony. It was not an accurate portrayal of Dr. Rack's testimony. I think what happened is the ALJ saw the pre-hearing interrogatories made a big impact on her. But then, after Dr. Rack heard the testimony at the hearing, he modified his answers and said, yeah, she could meet a listing sometime in the mid-90s, 95 to 98. In the pre-hearing interrogatories, he said, oh, it was sometime after 2000. That shows the importance of testimony in an accurate medical assessment. And it also shows, does it not, the importance of the ALJ's determination as to the plaintiff's testimony itself. Absolutely. I mean, he discredited the plaintiff's testimony, didn't he? Well, just for correction, it's a female ALJ, Your Honor. Excuse me. And she discredited it because... I mean, if she hadn't have discredited it, then there's no question Dr. Rack is agreeing with all the treating positions. I would say yes. She characterized Dr. Rack as saying she wasn't disabled at Dave Lauston Shirt. I say Dr. Rack says, I don't know. And based on the testimony, it's possible, but I don't know, especially with the specific residual functional capacity. I'll call it RFC, just so you're understanding. The RFC findings, he says, I can't say anything other than she would have some standing limitations. I can't say what. Basically, I don't know what her RFC would be, and she might have met a listing sometime in the mid-90s. There was no evidence and no finding of malingering, right? No evidence and no finding of malingering. Absolutely not. So then the ALJ has to say specifically which symptom testimony is not credible and what facts in the record lead to that conclusion. Under a clear and convincing standard. And we also don't have that here. Your Honor, yeah. What the ALJ's RFC finding was based on, it said, the activities of daily living from 1995 and 1996. That's what I'm basing my RFC finding on. The only evidence of that is her testimony and the three written statements from mother, then husband, and father. All of those support a finding of disability. And I dispute the assertion that it is vague. I think it's very clear she has stated during times of exacerbation she could not get out of bed, could not walk. Well, let's talk about the vagueness. Sure. It seems to me that what the ALJ was saying was that she rejected the testimony because the testimony was vague. Was there even one medical examiner who suggests that medical exacerbation during this time was possible? Oh, absolutely. The Dr. Kohenauer, it was a medical expert hired by Klingman. I think that was suspicious, warrants suspicion by the ALJ because normally it's a Social Security hired expert. But he did say, look, based on the MRI in 2000, the MRI in 1989, and the spinal tap test, based on my hundreds of patients I've treated, it's clear with those findings and the progression, I say she would have met the listing before 1996 and had disabling functional limitations before 1996. I believe he used 90% if I recall his testimony correctly. So, yeah, the deterioration, this is a reasonable inference. The guidance of 8320, Social Security ruling 8320, does not state you have to have medical evidence on the date last insured. We're fortunate we have medical evidence seven years before, nothing since, but that is MS. It's progressive. We have testimony from three third parties and the claimant that all support before 1996. The reasons she denied credibility of the three witnesses is, I believe, suspicious. She assumed, they're just talking about 2000 later when the heading says, please, 1995 and before, give us your answers. And to be quite frank, the mother was sitting outside wanting to testify. She didn't even call the mother in because there was time constraints in the record. She warned, you only have 12 minutes left, we still have a vocational expert. The mother never was able to come in. Dr. Rack said it would help me to hear from the mother, was not called. And it would help with the vagueness. One of the reasons she denied credibility of the claimant's testimony was the fog from, the mental fog from MS. Using that against her, saying you couldn't remember 10 to 20 years ago accurately, I'm discrediting you. Well, then call in the mother, Your Honor. You have an affirmative duty to create and consciously probe all medical evidence. We have the mother outside. Dr. Kohenauer repeatedly said, I hope you hear from the mother. I've talked to her extensively. There's extensive evidence before 1996 of her functional problems that were disabling. Yet the judge didn't even give time or offer to hear from the mother. I'm over time, Your Honor. Should I sit? You still have 57 seconds, so you can sit down and say it for rebuttal. Thank you, Your Honor. May it please the Court. Daniel Talbert for the Commissioner of Social Security, Michael J. Astru. The claimant is not entitled to disability insurance benefits unless she proves with acceptable medical evidence that she meets the definition of disability within the Social Security Act on or before the date last insured. In this case, substantial evidence supports the ALJ's finding that Ms. Campbell did not meet that burden to prove that she became disabled before June 30, 1996. Therefore, the Commissioner requests the Court to affirm the ALJ's decision. With respect to the medical evidence, the ALJ had several medical opinions to look at and to consider. It's the ALJ's role to decide between conflicting medical evidence. And in this case, the ALJ gave reasons for the findings that she had with regard to the different medical opinions. Well, but just a minute. That assumes there's conflicting medical evidence. What's conflicting? I saw an opinion by a treating physician. It was certainly not contradicted by Dr. Konauer. And if I read what Dr. Rack said in his written questions to the medical expert physical, it wasn't contradicted by that. He said, yes, P meets the listing criteria of 11.09. If I look at what he said at the hearing, he said some stuff, and then when we get that the patient or that the petitioner testified, then he changes what he has to say there. And he agrees again with the treating physician and Dr. Konauer. Where are the contradictions? The contradictions, Your Honor, are with regard to when Ms. Campbell became disabled. Well, but just a minute. When he had the testimony of the plaintiff in front of him or the petitioner, and she gave her testimony, after that he suggests that it's well within the 630-96 period. In fact, he says, I don't know, but I think it was in the mid. And then he says, or it might have been 96 to 98, which didn't seem to me to be at all contradicting the doctors. Well, Your Honor, I would say that it is. Dr. Reese, the treating source, said that the claimant was disabled since 1989. That was the time of the diagnosis of Ms. Well, but we're not talking about whether he's disputing whether it's 1989, whether he's disputing it's 2000, or we're talking about whether he's disputing it occurred before 1996. One doctor, Reese, said, absolutely not, it's 1989. Konauer says, absolutely not, it's 1995. And he says, based on our listening to the claimant, oh, well, it's probably in the mid-90s. Well, and Dr. Arack importantly said that he didn't know. He said it was impossible for anyone to be able to state with any certainty. Well, and if it's impossible for anyone to state, it doesn't seem to me he's conflicting at all. He doesn't know. Well, it is a conflict because there's one doctor, there's Dr. Reese, saying that the claimant became disabled in 1989. There's Dr. Konauer saying the claimant was disabled. That's your best argument, that because one doctor says one time and it's before 1996, another doctor says another time and it's before 1996, and he says he doesn't know, then it's conflicting? That's your argument? Well, it's enough that it is a conflict. I mean, there is a conflict between opinions. Why? You're arguing that there's a conflict between knowledge and ignorance. I'm sorry, can you repeat that, Your Honor? I can understand if Dr. Arack had said, in my medical opinion, the reasonable medical probability is that she was not disabled before 1996. But he didn't say that. He said, I don't know. And he says that no one can know. He says that it's just impossible. That's his opinion that no one can know. But there are two doctors who seem to have a different opinion. In her case, Smolin talks about what you do. You look at the symptoms that she was experiencing and having to go and lie in bed for up to a week eight to ten times a year is pretty disabling. I'm just curious, do you know anyone who has MS? Yes, Your Honor. Let me ask you about the lumbar spine puncture. He had a lumbar puncture. He had MRIs. None of them disagree with what the doctors said. None of them disagree with the diagnosis, Your Honor. They don't disagree with what the doctors said, nothing. There's not one speck of evidence that I have in this record that disagrees that this happened before 1996. I got Arack. He's saying, I don't know, but I think it's in the mid-'90s. I've got a lumbar puncture. It doesn't say. I got MRIs. They don't say. I got two doctors that say it is. Where's the contradiction? Well, Your Honor, I refer again to the fact that Dr. Arack says with his expertise and everything it's impossible to be able to pinpoint a particular date. And I would also point out that Dr. Arack said that the claimant was not disabled as of 1989, that the lumbar puncture in 1989 and the 1989 examination by Dr. Reese was not alone sufficient to establish that she was disabled then. So there's certainly a conflict to that extent. Let me ask you another question, change topics. It seems to me that the ALJ found the claimant was disabled in Step 4 and could not perform past relevant work. You'd agree with me about that, right? I would agree, Your Honor, that the ALJ found the claimant couldn't perform her past relevant work. All right. And then the ALJ rejected the claimant's testimony as to the times of exacerbation from 1989 to 1986, saying the testimony was vague, correct? Yes, Your Honor. Now, reviewing the testimony, I don't find any medical examiner which suggests that exacerbation during this time was not possible. Do you find any? No, Your Honor. So then I don't find any examiner that says that. So what's the reason for finding that vagueness? For finding her testimony to be vague? Yeah. What are the clear and convincing reasons the ALJ gave? Well, there is uncertainty. The claimant has uncertainty about the times of specific timeframes. Well, just a minute. Let's go back to my question. If the commissioner is going to suggest that the claimant has not given testimony, that they should believe they're supposed to come forth with clear and convicting reasons, clear and convincing reasons, we know it has nothing to do with the medical examiners because they say exacerbation can occur. In fact, they say it does occur, every one of them. So what's the reason for rejecting that her exacerbation from 89 to 96 is wrong, that it's vague? What is it? Your Honor, it's not specifically linked to the exacerbations itself. It's a finding that her testimony in general was vague, that she wasn't able to testify with precision about certain points in time. And since the time period is so important in that case, that is a crucial detail. It is important when she started to work as a paper hanger or when her mother started to help her or when she started taking certain medications. But bottom line, there isn't anything in the record that would suggest what she said was wrong. I mean, I'd look for the doctor to say it. I'd look for the medical records to say it. I'd look for anything. The only thing I've got in here is she didn't seek treatment and she may have had activities. That doesn't seem to be vagueness at all. If vagueness is the reason, he should state why it's vague. What do we really need? I mean, I have to look at what he says and see if it makes sense. If he said she didn't seek treatment, he can't say that, so you knew he wasn't going to say that. She had activities at the time. Well, if you look at what she did, he really can't say that. So he's saying vague, but he's not putting anything on it. It certainly would have been preferable, Your Honor, if ALJ had given more detail about that particular finding. But looking at that description of vagueness, that her testimony has been vague in general, and looking at the testimony that she had at the hearing, it's reasonable to infer from that you can see from that what you see certain inconsistencies or rather certain vaguenesses. And those are pointed out in our brief. There's some discussion of certain things that she wasn't able to testify precisely about. And there's also the issue of her current cognitive problems, her memory impairment. And I believe that there was a point made that the ALJ was using that against her. To the extent that the ALJ is using it against her, I would say that it's not an issue of saying that because she has a memory impairment at the present, she's just not credible in some general character evidence quality. It's the idea that her testimony isn't going to be reliable because she can't state with precision when certain things happen. If her testimony is credited, is there any reason why we wouldn't disagree with the ALJ? The doctors would be credited. Reese would be credited. Kunauer would be credited. There's no question that Rack would even be credited. So does your case all rely on whether we discredit the plaintiff's testimony or not? It relies in large part on that, Your Honor. Because there's – because since there isn't any objective evidence during the time period, all we have is the claimant's testimony. And you discredit the claimant's testimony not on the grounds that she's a malingerer or has any secondary gain, but that she is vague as to her statements that she was capable of doing her daily activities, that she was capable of doing wall hanging from time to time, and she didn't give specific instances of the length and degree of exacerbation through which she was suffering. That's part of it, Your Honor. There's also – the ALJ also talks about the claimant – the ALJ did talk about the claimant's lack of treatment, and the district court found that that was an improper consideration because she had alleged a lack of insurance. But the ALJ discussed the lack of insurance, discussed what the claimant said about her, and that that is still a valid possible consideration for the ALJ. There's also the fact that, as the ALJ noted, she seemed, based on her earnings records, to have led her life similarly after her diagnosis, after her alleged onset date, as she had led it throughout that time period. She's still working. Kennedy. Well, but is there – you will – you will give me that there's a difference between occasionally paper hanging and being able to work in the economy and jobs available in the economy that require sedentary but steady work? Because exacerbations can allow for occasional paper hanging, but exacerbations don't allow for steady work during the period of exacerbation. There is that distinction. I was comparing apples and oranges there. There is that distinction, Your Honor. But I think what's significant here is that, first of all, that the claimant had testified that the nature of this work, this paper hanging work, is sporadic and it's part-time, that it was something for her to make some extra money, and that was basically what she was doing both before the diagnosis and after the diagnosis. And I also want to point out that the paper hanger job was a medium job. It required a higher level of exertion than what the ALJ found the claimant could do during this period. All right. If there are no further questions, I will yield the remainder of my time. All right. Thank you very much, counsel. Thank you. Mr. Coley, what would you have us do? Well, ideally, Your Honor, I would like the, I believe, improperly discredited doctor and testimony credited based on the vocational expert's testimony on credit opinions regarding the exacerbations. There's no work that we could do. I would ask for a remand for payment of benefits. In the alternative, obviously, I think if you don't find that persuasive, at least a remand to probe the 95-96 time period with the third parties that the judge says, oh, I don't believe they were talking about the relevant time period, based on absolutely an unfounded assumption there. I believe the exacerbations, as Your Honor is questioning, is the key here. There is nothing reflected in the RFC about exacerbation of symptoms. Every single doctor, even Dr. Rapp, testified that this is expected and fully consistent with MS patients. The RFC finding under Social Security Regulation 96-8P has to encompass all limitations supported by the record. What was that citation? Social Security Ruling 96-8P, which also states, Your Honor, that this is a full-time work standard equivalent to five-day week, eight-hour jobs. The exacerbations are not accounted for. The frequent urination breaks, the exposure to heat, the manipulative problems, none of that are reflected in the RFC finding. That's a fatal flaw. Based on the vocational expert's testimony, if that is credited and all three doctors say that's the case, this case should be paid, an order paid. Thank you, Your Honor. If I can take 10 seconds of the Court's time, I was absolutely mortified at the I hope that reflects on me, not my client. I have absolutely no earthly idea how I missed some of these. We won't take that into consideration in determining your RFC. Thank you. It's a mental fog, obviously, when I was proofreading the brief. The mother did not say she could walk 100 years. It was 100 yards. I am mortified at that, and I apologize to the Court. It is hopefully not seen as a sign of disrespect to the Court or this process. Thank you. All right. Thank you, counsel. Campbell B. Astew is submitted.
judges: Wardlaw, Bea, Smith